IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JIM J. NAGEL,

                Plaintiff,                Case No. 3:09 CV 828

  -vs-

                                         <u>MEMORANDUM   OPINION</u>

HUSKY LIMA REFINERY, et al.,

                Defendant.

KATZ, J.

    This matter is before the Court on the motion to dismiss of Defendant Lima Refining Company's ("LRC") and Defendant Husky Energy Inc. ("Husky") (collectively "Defendants") (Doc. 62), Plaintiff Jim Nagel's ("Nagel" or "Plaintiff") opposition (Doc. 88), and Defendants' reply (Doc. 106).

    The Court notes federal question jurisdiction under 28 U.S.C. §1331, supplemental jurisdiction under 28 U.S.C. §1367, and proper venue under 28 U.S.C. §1391. For the reasons stated below, Defendants' motion will be granted.

## I. BACKGROUND

    LRC is a corporation that operates an oil refinery in Lima, Ohio. It is currently a subsidiary of Husky, a Canadian corporation. LRC was created in 2005 to hold and operate the refinery by a previous owner and operator. Husky bought LRC in July 2007.

    Work at the refinery is divided between union positions, contractors, and management. The union positions are further subdivided into promotional lineups. A collective bargaining agreement governs the treatment of the union positions, including transfer between lineups and ascension within lineups.

Plaintiff started working at the refinery in 1998. Initially, he worked on the North Lima Integrated Unit lineup and in 2006 bid into the South Lima Integrated Unit ("SLIU") lineup. He was assigned to the SLIU until his termination. The top position on both of these lineups is called a Control House operator. At no point was Plaintiff qualified as a Control House operator nor did he receive any training to be so qualified. Instead, he worked as an outside process operator in both lineups. Among other job duties, outside process operators have significant fire and emergency response responsibilities. These are broken out into incipient firefighting duties, where an operator addresses a fire or emergency at his or her unit, and the Emergency Response Team (ERT), where operators respond to situations at units other than their own. Though Defendants only recently decided that all outside process operators must be trained and qualified for the ERT, Plaintiff did not at anytime reach a portion of the SLIU lineup where he would not have been required to be ERT qualified prior to the change. Each quarter, those required to be ERT qualified spent one day training on a variety of response issues including CPR and firefighting. Federal rules require all outside process operators to be trained on and able to operate fire extinguishers and self contained breathing apparatus ("SCBA"). The models which an outside operator may be called upon to use as part of either incipient firefighting or ERT weigh more than thirty pounds.

In addition to the permanent assignment to lineups, the collective bargaining agreement permits for union members to be temporarily assigned to other positions. For one of these, called a Group Leader, a union member is selected by management for an assignment not to exceed six months. These positions generally involve duties performed in the control house, but not Control House qualification. The terms of the collective bargaining agreement require that Group Leader

positions are temporary. Plaintiff refers to these assignments, and Group Leader positions in particular, as "light duty" because they generally involve paper work or other non-strenuous work.

In early July 2007, Plaintiff began leave under the Family and Medical Leave Act ("FMLA") in order to receive surgery on his hand. He was paid during this leave because he also began receiving short-term disability benefits. Though his return to work related to this hand surgery was delayed several times, all of his leave was approved and he raises no objection to the response to this surgery. Eventually, all restrictions and conditions related to his hand were lifted and his hand doctor released him to return to work.

While he was off work for his hand surgery and recovery, Plaintiff asked about a potential surgery on his back which might leave him with a permanent climbing restriction. This lead to a series of discussions, including an August 2007 conversation between Plaintiff, Joe Martino ("Martino"), and David Stein ("Stein") (two members of management responsible for, among other things, SLIU and human resources, respectively). At that time, Plaintiff learned that a permanent climbing restriction was incompatible with his position as a process operator and that such a restriction would lead to exhaustion of his short-term disability benefits, requiring him to apply for long-term disability benefits. Plaintiff requested a permanent light duty assignment and was told that no permanent light duty assignments existed anymore. The call was precipitated by an e-mail exchange among members of LRC's management regarding Plaintiff's proposed back surgery, which contained statements that a permanent restriction on climbing would lead to short-term and long-term disability and an allusion to an eventual termination. At no point during these discussions did Plaintiff actually have any restrictions related to his back, lifting, or ERT. As of his deposition, Plaintiff has not had the back surgery related to these discussions.

3

In October 2007, Plaintiff was preparing to return to work following the eventual resolution of his hand condition. He visited his back specialist ("Dr. O'Neill") and obtained a work restriction slip stating "NO ERT WORK." Though Dr. O'Neill released Plaintiff to work with only that restriction, LRC could not process that particular restriction and began discussions amongst themselves, with Plaintiff, and with Dr. O'Neill regarding Plaintiff's restrictions. LRC provided Dr. O'Neill with a list of essential function for Plaintiff's job[1] (which included a checked box reading "ERT"). Dr. O'Neill sent the list back with indications that Plaintiff should wear a back brace and could otherwise do everything but ERT. LRC was still unsatisfied and Dr. O'Neill eventually replaced the "no ERT" restriction with one prohibiting CPR, firefighting, and lifting over thirty pounds. LRC refused to accommodate the lifting restriction. The record indicates almost no further discussion of Plaintiff's condition until he applied for long-term disability benefits.

Plaintiff's one year of short-term disability benefits expired in July 2008. They had run continuously since his hand surgery because he never returned to work. He applied for long-term disability benefits. It is that application which finally refers to his restrictions as "permanent." In October 2008, the application was approved and Plaintiff's employment terminated due to a uniform policy terminating anyone on long-term disability. In late summer 2007, Stein had specifically distinguished such a termination from a firing.

Plaintiff raised no objection to his treatment until he heard that Stephanie O'Connor, an outside operator on a different lineup, worked as a Group Leader from August to October 2008 while she was pregnant. Her assignment involved paperwork in the control house. After learning

---

[1] There is some dispute over the actual essential functions of Plaintiff's job.

of this, he filed suit alleging claims for disability discrimination under the Americans with Disabilities Act ("ADA"), gender discrimination under Title VII, disability and gender discrimination under Ohio Revised Code § 4112, retaliation for the exercise of rights under the FMLA, and intentional infliction of emotional distress under Ohio law.

## II. STANDARDS

*A. Summary Judgment*

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56©.  The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).  The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S.

at 586. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) . The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

*B. Americans with Disabilities Act*

Though Congress amended the ADA in 2008, those amendments were not made retroactive. *Milholland v. Sumner County Bd. of Educ.*, 569 f.3d 562, 565 (6th Cir. 2009). Because all of the events pertinent to this case occurred before 2009, the Court will apply the statute and case law of the ADA prior to the 2008 amendments. *Id*. at 566-67. Further, because "Ohio's disability discrimination law parallels the ADA in all relevant respects," the Court's analysis of Nagel's "ADA claim also resolves his state law discrimination claim." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (citations omitted).

A plaintiff can show discrimination actionable under the ADA through either direct evidence of such discrimination or through circumstantial evidence following the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) (citations omitted). In a case using direct evidence:

> 1) The plaintiff bears the burden of establishing that he or she is "disabled."
> 2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.
> 3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer

*Id.* at 1186.

To prove a *prima facie* case of disability discrimination under the circumstantial evidence framework, a plaintiff must show:

> 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Id.*

If a plaintiff satisfies the requirements of a *prima facie* case, following the *McDonnell Douglas* framework, the defendant must produce a non-discriminatory explanation which plaintiff may attack as pretext. *Id.*

Under the ADA as applicable to Plaintiff's claims, he can prove that he is disabled by showing either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (c) being regarded as having such an impairment." *Milholland*, 569 F.3d at 565 (quoting 42 U.S.C. § 12102(2) (2006)). Plaintiff bears the burden of proof under either the direct or circumstantial evidence framework. *Hein v. All America Plywood Co.*, 232 F.3d 482, 487 (6th Cir. 2000).

*C. Gender Discrimination*

Just as in the ADA context, an Ohio reverse gender discrimination claim mirrors the federal claim, here Title VII, such that the federal analysis disposes of both claims. *Kimble v. Intermetro Indus.*, 288 F.Supp.2d 876, 879 (N.D. Ohio 2003) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E. 2d 128, 131 (Ohio 1981)). Under that analysis, using circumstantial evidence, a plaintiff may establish a *prima facie* case of discrimination by showing: (1) plaintiff's membership in a protected class; (2) plaintiff's qualification for the position in question; (3) that plaintiff suffered an adverse employment action (or was denied a benefit); (4) that others, similar to plaintiff in all respects other than membership in the class at issue, did not suffer the same adverse action (or denial of benefit). *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006) (citing *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003)); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir. 1994) (citing *McDonnell Douglas*, 411 U.S. at 802). In the case of

discrimination alleged against a person because of majority rather than minority status, a plaintiff must satisfy the first element by showing "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Murray v. Thistledown Racing Club*, 770 F.2d 63, 67 (6th Cir. 1985) (internal citation omitted). Such cases also emphasize the fourth element, better treatment of similarly situated members of the preferred minority class. *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004) (citing *Sutherland* and *Pierce*). If a plaintiff establishes a *prima facie* case, analysis proceeds under the framework set forth in *McDonnell Douglas* and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Id*.

*D. Family and Medical Leave Act Retaliation*

The FMLA supports claims for either "interference" with the rights provided by the statute or "retaliation" against the exercise of such rights. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citations omitted). Plaintiff has not asserted a claim for FMLA interference, only retaliation. "Absent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the tripartite burden-shifting framework announced in *McDonnell Douglas*." *Id.* A plaintiff may establish a *prima facie* case of FMLA retaliation by demonstrating "that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Id.* (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)).

### III. ANALYSIS

As an initial matter, the Court will address Plaintiff's attempt to hold Husky liable under any of his claims. Plaintiff cites no legal authority in support of holding Husky liable. He bases

9

his assertion entirely on factual assertions of unclear documents and policies, combined with Husky's ownership of LRC.

Under Ohio law, in order to pierce LRC's corporate veil, not only would Plaintiff have to show that Husky's control over LRC exceeded mere ownership to the point where LRC "has no separate mind," but he would also have to show that such control was used "to commit fraud or an illegal act" against him. *Dombroski v. Wellpoint, Inc.*, 895 N.E.2d 538, 543 (Ohio 2008) (quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993)). At most Plaintiff has asserted that Husky determined the broad policy that any hourly employee on long-term disability would be terminated and that some documents invoke Husky, rather than LRC. Plaintiff has made no attempt to show that these facts, if proven,[2] would satisfy the test to pierce LRC's corporate veil. Accordingly, Defendants will be granted summary judgment with regard to Husky on all of Plaintiff's claims.

*A. Disability Discrimination*

In order to satisfy the requirements of both a direct evidence case and a circumstantial evidence case of disability discrimination, Plaintiff must first prove that he is disabled under the law.[3] He presents three theories to demonstrate that he is disabled: actual substantial limitation on

---

[2] Because of the inadequacy of Plaintiff's assertions, the Court need not address the adequacy of his presentation of the record on which he bases those assertions.

[3] Both Plaintiff and Defendants direct the Court to irrelevant determinations of Plaintiff's disability standard. Plaintiff presents his qualification for short term and long term disability benefits under both his terms of employment and the terms of the long term disability contract; Defendants present a determination by the Social Security Administration. Neither even addresses how such definitions relate to the definition of disability pertinent to this action. Defendants also present Plaintiff's testimony on his disability, but again, with the standard on which he based his

(continued...)

10

the major life activities of bending, stooping, standing, and lifting; actual substantial limitation on the major life activity of working; and being regarded as substantially limited in the major life activity of working.

With regard to his first theory, Plaintiff notes difficulties bending, stooping, and standing in addition to the lifting restriction provided by his doctor. All four activities, either separately, or in combination satisfy the "major life activity" requirement. *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997) (quoting 29 C.F.R. § 1630.2(I) and 29 C.F.R. pt. 1630 App.); *see also Mahon v. Crowell*, 295 F.3d 585, 591 (6th Cir. 2002) (considering the ability to "sit, stand, bend, stoop, walk, climb, or lift" as major life activities).

However, Plaintiff's limitations do not rise to the level of a "substantial limitation." *Mahon*, 295 F.3d at 590-91 (citing *Toyota Motor Mfg, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197-98 (2002)) ("any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the Act"); *Penny*, 128 F.3d at 415 ("moderate difficulty" does not rise to the level of disability). With regard to his postural difficulties, he has said that "I don't do a lot of it anymore ... I don't crawl under the cars anymore. I don't put in appliances anymore." Doc. 88 at 20 (quoting Doc. 60). Not only is Plaintiff able to bend, stoop, and stand, but his prescription brace significantly decreases his discomfort. Doc. 60 at 131. The Court must take account of any corrective measures when determining Plaintiff's level of impairment. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488-89

---

[3](...continued)
determination. Without connection to the standards under the ADA, all of these determinations are irrelevant to disability under the ADA.

11

(1999). With the brace, Plaintiff acknowledges that he is not particularly limited in his ability to bend, stoop, and/or stand.

Plaintiff's listed lifting restriction was thirty pounds. Doc. 88 at 20. He presents no facts or law demonstrating that a thirty pound lifting restriction, even combined with his other ameliorated conditions, "substantially" restricts him, because he exceeds the restriction on his own. Doc. 60 at 130.

Though Plaintiff alleges physical limitations in "major life activities," none of the assertions, even added together, rises to the level of a "substantial limitation." Accordingly, Plaintiff's asserted physical limitations simply do not rise to the level of disability under the ADA.

If a plaintiff cannot establish a substantial limitation in any other major life activity, the Court can consider whether the plaintiff is substantially limited in the major life activity of "working." *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633 (6th Cir. 1998) (quoting 29 C.F.R. app. § 1630.2(j)). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *McKay v. Toyota Motor Mfg, U.S.A., Inc*., 110 F.3d 369, 372 (6th Cir. 1997) (quoting 29 C.F.R. § 1630.2(j)(3)(I)). Plaintiff's sole assertion of substantial limitation in the major life activity of working is that he "could not perform the alleged essential functions of *his job*, which is a major life activity." Doc. 88 at 19 (emphasis added). Other than the inability to perform the job he lost, Plaintiff never mentions any way in which he is limited as to "working," let alone how he is restricted from "either a class of jobs or a broad range of jobs." *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 317 (6th 2001) (quoting 29 C.F.R. § 1630.2(j)(3)(I)). Thus, Plaintiff has failed to demonstrate that he is disabled under the ADA due to substantial limitation in the major life activity of working.

12

Initially, with regard to Plaintiff's theory that Defendants regarded him as disabled, Plaintiff points to testimony by Martino that Plaintiff was disabled because he could not perform the duties of his job. This does not satisfy his burden. *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001) (quoting *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2nd Cir. 1998)). Instead, he "must show that the employer regarded the individual as disabled within the meaning of the ADA." *Id.* In order to satisfy this burden, Nagel must show that LRC either mistakenly believed he had "a physical impairment that substantially limits one or more major life activities" or that LRC "mistakenly [believed] that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489.

Because the "regarded as disabled" theory requires that his employers entertain some mistaken view about him, Plaintiff cannot base such a theory on medical restrictions in place at the time of a decision. *Gruener v. Ohio Casualty Ins. Co.*, 510 F.3d 661, 665 (6th Cir. 2008); *Mahon*, 295 F.3d at 592 (following "the specific recommendations of [a] treating physician" is not regarding "as significantly impaired in these major life activities") (citation omitted) (alteration in original). Thus, Nagel cannot establish LRC regarded him as disabled by saying that it was wrong about his lifting restriction. Further, he has alleged nothing about any belief with regard to his ability to bend, stoop, or stand. Finally, Plaintiff's only attempt to show that Defendants regarded his as substantially limited in the ability to work (not based on an irrelevant determination of disability under a non-ADA definition) involves only Plaintiff's particular job. Further, the statements Plaintiff notes in making this argument clearly relate to the hypothetical back surgery discussion which took place in August of 2007. Because Plaintiff has presented no evidence that

13

Defendants entertained <u>any</u> belief with regard to his ability "to work a broad class of jobs," he cannot establish that they regarded him as disabled.

Finally, Plaintiff raises the issue of whether any of his restrictions were permanent (or, more generously to him, indefinite) or temporary. Presumably, he is trying to establish mistake or otherwise impugn his termination. Plaintiff ignores that "temporary physical conditions ... do not generally constitute substantial impairments." *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938 (6th Cir. 2000); *see also Williams*, 534 U.S. at 198 ("The impairment's impact must also be permanent or long term"). Not only does Plaintiff present little evidence that his restrictions were temporary (they had no end date, were never lifted, and may persist even now), but if he did show that they were temporary, he would have to demonstrate how they still qualified as disabilities, something he has not attempted. In fact, Plaintiff may have raised the issue merely in an attempt to create a factual dispute, ignoring that the issue would not save his case if it would not survive in either situation. Because Plaintiff has failed to address how his claim would survive if his conditions were temporary and because he has not shown how any such mistake would override an existing medical restriction, which he has not shown he attempted to have removed, the issue of whether Plaintiff's restrictions/conditions were temporary is immaterial, even if the fact is reasonably disputed.

Because Plaintiff fails to establish that he is disabled under the ADA, the Court need not address the issue of accommodation, another element common to direct and circumstantial cases. However, the Court does note that not only did Defendants offer Plaintiff an accommodation, but he accepted it. He received full pay for six months and then half pay for six month under the short term disability policy and then received benefits under the long term disability policy. Plaintiff

has made no attempt to show why this accommodation did not satisfy Defendants' responsibility to offer a reasonable accommodation beyond arguing that he wanted a different accommodation. *See Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-801 (6th Cir. 1996) ("an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided"). Thus, Plaintiff's attempt to show lack of accommodation fails without analysis whether his requested accommodation is reasonable under the principles describing when an employer must transfer an employee, adjust functions of a position, or whether the accommodation he requested involved an existing position or under the principles regarding the "interactive process."

Thus, due to Plaintiff's failure to prove that he is disabled under the ADA (and due to the failure of his accommodation arguments) the Court will grant Defendants summary judgment on Plaintiff's direct evidence claim for disability discrimination (Counts One and Four). Additionally, the Court will rule that Plaintiff has failed to establish a *prima facie* case for a circumstantial evidence claim for disability discrimination.

*B. Gender Discrimination*

Plaintiff relies on two assertions to convince the Court that background circumstances support the suspicion that Defendants discriminate against men. First, he presents his belief that he was discriminated against in part because he was a man. He believes this because of his second background circumstance: a couple of women received light duty assignments. In other words, he believes he was discriminated against because women received an assignment he thinks that he could have received. At no point does he even refer to Defendants' treatment of men other than himself. Due to his lack of dispute, the Court thus credits statements, including one by Plaintiff,

15

that several men have also received assignments like those he wanted. Taken as true and casting all beneficial inferences in his favor, Plaintiff's facts and assertions convince the Court that women were treated better Plaintiff.[4] They do not convince the Court that Defendants treated women better than men. Thus, Plaintiff has not presented background circumstances implying that Defendants discriminate against the majority and therefore he has failed to demonstrate a *prima facie* case of reverse gender discrimination.

*C. FMLA Retaliation*

Plaintiff notes two actions he claims constitute retaliation for exercising his rights under the FMLA: he was placed on a "bad boys" list and he was eventually terminated. His claim with regard to the "bad boys" list fails because he has not established that it is an adverse employment action. His only attempt to prove that something bad happened because of his presence on that list is to claim that it was connected to his eventual termination. In fact, he argues that his presence on the list is evidence of intent with regard to his eventual termination. However, he presents no evidence of this, only the conclusory assertion.

Plaintiff does not even claim that his termination did not happen as an automatic result of his receipt of long term disability benefits. Instead, he claims that Defendants decided to force him to remain on short term disability and eventually apply for long term disability leading to his

---

[4] Though not necessary for the decision, the Court notes that Plaintiff's proof of differential treatment under the fourth prong of the Title VII discrimination test also fails. Even though he can point to some women who received better treatment, he fails to demonstrate that their cases were sufficiently similar to his. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) (comparison must be with individuals "similarly-situated *in all relevant respects*") (emphasis in original) (citation omitted). Few of the "comparables" Plaintiff offered either had permanent restrictions, a permanent "light duty" assignment for which Plaintiff was qualified, or the same supervisors, and none had all of these. Thus, Plaintiff has failed to show that anyone treated differently from him was actually similarly situated.

16

termination. His proof that there was a causal connection between his use of FMLA rights and his termination consists entirely of an uncited quote to this "decision" and a reference to the "bad boys" list. The only facts to construe in his favor are his presence on the list and his disability leading to termination. All else is supposition and assertion.

Therefore, Plaintiff fails to present evidence, rather than conclusory argument, that his presence on the "bad boys" list was an adverse employment action or that there exists a causal connection between his exercise of his FMLA rights and his termination. As such, he has failed to establish a *prima facie* case of FMLA retaliation.

Because Plaintiff has failed to establish the facts establishing any *prima facie* case, the Court need not consider Defendants' proffered non-discriminatory reasons for their actions or whether such reasons are pretextual. Therefore, the Court will grant Defendants summary judgment on all of these claims (Counts One and Four, circumstantial case of disability discrimination; Count Two, FMLA retaliation; and Counts Three and Five, gender discrimination).

*D. Intentional Infliction of Emotional Distress*

Under Ohio law, a defendant "who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for" the tort of intentional infliction of emotional distress. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 453 N.E.2d 666, 671 (Ohio 1983) (overruled on other grounds by *Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007)). Plaintiff claims that "Defendants' conduct and action in discriminating against [him] is clearly extreme and outrageous." Doc. 88 at 29. However, even if Plaintiff could show that his termination was the

17

result of discrimination, "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999). Further, some material concerns and bad mood, Plaintiff's proffered "severe emotional distress," do not rise to the level required to be actionable under Ohio's intentional infliction of emotional distress tort. *Id.* ("financial concerns" insufficient); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111 (6th Cir. 2008) (assertion by plaintiff and her sister that plaintiff seemed depressed insufficient without more). Because Plaintiff has failed to present evidence amounting to either "extreme and outrageous conduct" by Defendants or his own "severe emotional distress," the Court will grant Defendants summary judgment on his Ohio intentional infliction of emotional distress claim (Count Six).

## IV. CONCLUSION

For the reasons discussed herein, Defendant's motion for summary judgment (Doc. 62) is hereby granted.

Because Plaintiff has neither identified, served, nor given the Court any other reason to leave the case open with respect to defendants John Doe and Jane Doe, all claims against those defendants are dismissed. Case closed.

IT IS SO ORDERED.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE